**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RANDALL CUNNINGHAM, ISABEL SIPPO-STOCKMAN, SRUTI BHAUMIK, and KUAWANDA RAGLAND, individually and as the representatives of a class of similarly situated persons, | ) ) ) ) ) | |
| | ) | Case No.: 1:26-cv-00708 |
| Plaintiffs, | ) ) | Honorable John Robert Blakey |
| v. | ) ) | |
| SMARTE INC., a California corporation, | ) ) | |
| Defendant. | ) ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Randall Cunningham ("Cunningham"), Isabel Sippo-Stockman ("Sippo-Stockman"), Sruti Bhaumik, and Kuawanda Ragland ("Ragland"), individually and on behalf of all other persons similarly situated, allege the following against Defendant SMARTe, Inc. ("SMARTe" or "Defendant").

**NATURE OF ACTION**

1.     Plaintiffs and members of the proposed classes (the "Classes" or "Class Members") seek statutory damages, an injunction, and other relief from SMARTe for violations of their right of publicity as protected by statutes in Illinois, California, and Alabama (the "Action").

2.     As discussed below, Illinois, California, and Alabama prohibit the use of an individual's name and other personal identifying information for commercial purposes without first obtaining consent, written or otherwise. *See* Illinois Right of Publicity Act ("IRPA" or "Act"), 765 ILCS § 1075/1 *et seq.*; California Civil Code § 3344, *et seq.*; Alabama Right of Publicity Act ("ARPA"), Ala. Code § 6-5-770 *et seq.*

3.      SMARTe provides an internet-based business search platform to help visitors to its website connect with prospective business-to-business ("B2B") clients.[1] Users of SMARTe's platform can search for and obtain information about companies and individuals from its database. For individuals, this information is presented as a "profile" and includes such information as their names, contact information, and job titles.

4.      SMARTe allows users to access and use its platform for free after providing a business email address. This free access is limited in platform functionality and the number of profiles that can be viewed.

5.      SMARTe provides free access to its platform and database to have users familiarize themselves with the platform in the hope of incentivizing them to enter into paid subscriptions. In other words, SMARTe utilizes the limited free access to the profiles contained on its database to market its subscription services.

6.      SMARTe also offers users paid subscription plans for access to its platform and database. The paid subscriptions allow users to access more platform tools and individual profiles.

7.      Plaintiffs and putative Class Members have no relationship with SMARTe and have never subscribed to or used SMARTe's platform.

8.      Plaintiffs and the Class Members never provided SMARTe with consent, written or otherwise, to use their identities to advertise subscriptions to SMARTe's platform.

9.      Despite failing to obtain consent from Plaintiffs and the Classes, SMARTe nevertheless utilized their personal identifying information for the commercial purpose of marketing users to enter into paid subscriptions for additional access to personal information

---

[1] Information obtained from SMARTe's website, www.smarte.pro, last visited on March 27, 2026.

2

contained in its database, which is the very harm the right of publicity statutes at issue here were enacted to prevent.

10. Plaintiffs bring this First Amended Complaint ("FAC") seeking an order (i) declaring that SMARTe's conduct violates the aforementioned state statutes, (ii) requiring that SMARTe cease the unlawful activities described herein and enjoining SMARTe from committing such unlawful activities in the future, (iii) awarding Plaintiffs and the proposed Classes statutory damages in amounts prescribed by the respective statutes per violation or an amount equal to actual damages/profits, whichever is greater, and (iv) an award for punitive damages, if warranted, and attorneys' fees and costs.

## PARTIES

11. Plaintiff Randall Cunningham is a citizen of the State of Illinois, residing in Illinois.

12. Plaintiff Isabel Sippo-Stockman is a citizen of the State of Illinois, residing in Illinois.

13. Plaintiff Sruti Bhaumik is a citizen of the State of California, residing in California.

14. Plaintiff Kuawanda Ragland is a citizen of the State of Alabama, residing in Alabama.

15. Defendant SMARTe, Inc. is a California corporation founded in 2005 with its principal place of business in Sunnyvale, California. Through its proprietary software and AI-driven engine, SMARTe seeks out and compiles identifying information of Illinois, California, and Alabama citizens and uses that information to market its online platform to Illinois, California, and Alabama citizens and others without consent. SMARTe is a private company.

3

## JURISDICTION AND VENUE

16.     This Action was originally filed on December 12, 2025, in the Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois, Law Division, as Civil Action No. 2025LA001588. The Action was removed to this Court by Defendant on January 21, 2026, which stated that removal was made pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. (*See* Doc. 1 at 8 ¶ 2).

17.     As alleged by Defendant, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because sufficient diversity of citizenship exists between the parties – Plaintiffs are citizens of several states (California, Illinois, and Alabama), and Defendant SMARTe is a California corporation with its principal place of business located in Sunnyvale, California. The aggregate amount in controversy in the Action exceeds $5,000,000, exclusive of interest and costs, with at least 100 or more potential Class Members based on the number of individuals identified through the SMARTe platform and the damages available through the various statutes at issue.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims of Plaintiffs Cunningham and Sippo-Stockman and other putative Class members occurred in this District. SMARTe sought out and compiled the names and other identifying information of Plaintiffs Cunningham and Sippo-Stockman and other Illinois citizens and used that information for marketing to Illinois citizens and others without written consent. In so doing, Defendant violated their right of publicity under Illinois law, as well as the right of publicity of other putative Class Members residing in this District.

**ILLINOIS RIGHT OF PUBLICITY ACT**

19.     IRPA was enacted in 1999 to recognize individuals' "right to control and to choose whether and how to use [their] individual identity for commercial purposes." 765 ILCS § 1075/10. The rights protected under IRPA "are property that are freely transferable in whole or in part to any person . . ." as set forth in the Act. *Id*. § 1075/15.

20.     IRPA defines "identity" as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS § 1075/5.

21.     IRPA  defines "commercial purpose" in part as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS § 1075/5.

22.     IRPA prohibits the use of an individual's identity for commercial purposes without first obtaining prior written consent. 765 ILCS § 1075/30.

23.     IRPA provides that a violation of the Act may result in statutory damages in the amount of $1,000 per violation or actual damages and profits derived from the unauthorized use, whichever is greater. 765 ILCS § 1075/40.

24.     IRPA further provides that punitive damages may be rewarded for willful violations and authorizes the issuance of injunctive relief where appropriate. 765 ILCS § 1075/40 & 50.

**CALIFORNIA CIVIL CODE § 3344**

25.     Pursuant to California Civil Code § 3344:

[A]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods

5

or services, without that person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof. In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by them as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use ands are not taken into account in computing the actual damages."

26.    Also pursuant to § 3344, punitive damages may also be awarded, as well as attorney's fees and costs.

## ALABAMA RIGHT OF PUBLICITY ACT

27.    ARPA protects "those attributes of a person that serve to identify that person to an ordinary viewer or listener, including, but not limited to name, signature, [or] …. likeness." AL ST § 6-5-772.

28.    ARPA prohibits the use of an individual's identity "for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services …. without consent." AL ST § 6-5-772.

29.    Any person who establishes a violation of ARPA shall be eligible to receive: (i) statutory damages of $5,000 per action or compensatory damages including the Defendant's profits, (ii) any other damages available under Alabama law, including punitive damages and (iii) injunctive relief. AL ST § 6-5-774. Liability attaches whether the use is for profit or not. AL ST § 6-5-772.

## FACTUAL ALLEGATIONS

30.    SMARTe is a sales-intelligence platform. SMARTe's platform provides access to its database. SMARTe's Internet website states its database contains approximately 290 million B2B contacts and 65 million company profiles.[2]

---

[2] Information obtained from SMARTe's website, www.smarte.pro, last visited on March 27, 2026.

31.     SMARTe also states that its platform provides B2B sales professionals with access to accurate, globally sourced data that its AI-driven engine updates constantly, delivering 75% mobile-number coverage and 95% email accuracy across North America.

32.     SMARTe's platform allows users to search for individuals and obtain access to their personal information through its website interface. SMARTe functions as a data broker, aggregating individual information from public records and other sources and making that information available to sales professionals through paid subscriptions.

33.     Users of SMARTe's platform can search and filter for individuals housed in its database by location, industry, and other criteria.

34.     The personal information accessible through SMARTe's platform includes individuals' full names, job titles, company affiliations, email addresses, and mobile phone numbers, and in some cases also includes profile photos and LinkedIn profiles. Collectively, this information allows ordinary reasonable users to identify specific individuals. Indeed, SMARTe touts its data accuracy, providing users to "[r]each the right prospect and close deals faster."[3]

35.     SMARTe operates on a business model designed to convert free users into paying subscribers. SMARTe offers prospective customers free access to acquaint themselves with the platform but limits this access to incentivize subscription purchases.

36.     SMARTe's platform allows users to view the titles and roles of persons associated with a particular company, the person's contact information, and other professional information; this information is viewable with SMARTe's free plan.

37.     Under the free plan, users are limited to 10 credits, with one credit required to reveal one individual's full contact information. In contrast, SMARTe's paid subscription tiers

---

[3] https://www.smarte.pro/enterprise-marketing, last visited on April 1, 2026.

offer significantly more credits, representing a substantial increase in access to personal information. The paid tiers also provide the user with greater functionality on the platform.

38. When users first search for individuals on SMARTe's platform during a free trial, they can access contact listings to find individuals. Users can search by name or filter according to location or industry, among other criteria. As shown in the image below (with names and profile photographs redacted), the platform displays individuals' names, job titles, and company affiliations, along with icons indicating the availability of email addresses and mobile phone numbers. Each contact entry features two icons—one for email and one for mobile phone—indicating the potential availability of that information. Any email address and mobile phone number for a contact entry is not visible to users unless they click the "Reveal" button for a specific individual.



39.     When the user clicks the "Reveal" button, the system deducts one credit and displays the email address and any mobile phone number associated with a contact. This process renders all the personal data readily available without the individuals' knowledge or consent. The image below (with names, profile images, and the revealed email and phone number reacted) shows what is displayed when a user clicks the reveal button for a contact:



40.     As shown in the two images on the following page (names and profile images redacted), after users exhaust their allocation of 10 free credits, SMARTe displays a message notifying users that they have reached their quota limit, and then another message encouraging them to upgrade to paid subscriptions to continue accessing personal information. The platform clearly indicates when users have reached their credit limit and prompts them to upgrade to access additional contact details.

9





41. SMARTe also offers a Chrome extension that allows users to capture leads directly from their browser while browsing websites, further expanding the ways in which individuals' personal information can be accessed and utilized without their consent.

42. The image below shows the plans presented to a user when they click to upgrade their account. The "Free" plan ("Perfect for individuals exploring SMARTE's capabilities") provides 1 license and 10 credits per month. The "Pro" plan is $25 per license, per month, providing 50 credits per month, with the ability to purchase additional credits, as well as additional features such as export capabilities and integrations. The "Enterprise" plan starts at $15,000 per year minimum, with the price increasing depending on the number of licenses and number of credits. The Enterprise plan also includes additional support.



43. The purpose behind SMARTe providing users with a free account and the ability to unlock a limited number of contacts is to advertise, market, and convince prospective customers to purchase subscriptions to paid plans, where users can unlock exponentially more identifying information of individuals profiled on SMARTE database.

11

44. By allowing prospective customers to "sample" real individuals' identifying information through its free version, SMARTe uses Plaintiffs' and Class Members' identities as marketing tools to demonstrate the value of its paid subscriptions.

45. As a data broker, SMARTE knowingly and deliberately uses individual identities as a marketing tool without consent, thereby subjecting these individuals to unwanted solicitation and potential harassment.

46. Plaintiffs and members of the Classes have intellectual property in their names, likenesses, and identities recognized by law.

47. Plaintiffs and members of the Classes have the right to exclude anyone from using their identities for commercial purposes without their consent, written or otherwise.

**Facts Relating to Plaintiff Randall Cunningham (Illinois)**

48. As of August 2025, Plaintiff Randall Cunningham's identity was contained in SMARTe's database and accessible through SMARTe's platform.

49. Cunningham's "profile" contained in SMARTe's database includes his name, photograph, job title, job location, and mobile phone number. This information is accessible through SMARTe's search function on the platform and is sufficient to identify Cunningham.

50. Potential customers availing themselves of the free access to the SMARTe Platform are able to view Cunningham's identity in the SMARTe database by searching for him by name or by filtering according to location or industry, among other criteria. Such potential customers are then able to view additional information about Cunningham by hitting the "reveal" button using their limited free credits.

51. SMARTe allows free access to Cunningham's identifying information contained in its database to have potential customers familiarize themselves with the platform in the hope

that those customers are incentivized to enter into paid subscriptions for upgraded access to its database through the Platform.

52. Cunningham's identity has been made accessible, *i.e.*, held out, by SMARTe through its free access to market paid subscriptions to its platform and has thus been used by SMARTe for a commercial purpose under IRPA. *See* 765 ILCS § 1075/5.

53. Cunningham has no relationship with SMARTe and does not utilize or subscribe to its platform.

54. Cunningham has property rights in his name, likeness, and identity expressly recognized by IRPA. *See* 765 ILCS § 1075/15. Cunningham has the statutory right under IRPA to exclude anyone from using his identity for commercial purposes without his written consent. § 1075/30(a).

55. Cunningham did not provide SMARTe with written consent to use his identity for commercial purposes, including marketing paid subscriptions, as required by Illinois law. Had SMARTe requested his consent, Cunningham would not have provided it.

56. In using and exercising control over Cunningham's identity by making it accessible through its free access, without his written consent, SMARTe has injured Cunningham by violating his "right to control and to choose whether and how to use [their] individual identity for commercial purposes." *See* 765 ILCS § 1075/10.

57. SMARTe's use of Cunningham's identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Cunningham is a willing participant in the platform, which he is not, and that he wants to receive unsolicited communications from sales professionals, marketers, and business development representatives, which he does not.

58. SMARTe has injured Cunningham by using his identity for its own commercial purposes, *i.e.*, to market subscriptions to the SMARTe platform, without his written consent in

13

violation of IRPA.

59. The use of Cunningham's identity to advertise and market subscriptions to SMARTe's platform demonstrates that his identity has commercial value, to wit, its inclusion in the platform. SMARTe's business model is dependent on Cunningham's identity, and others like it. SMARTe derives value through the accumulation of individual identities for its platform by (i) charging subscribers a monthly or yearly fee for access to those identities, and (ii) using the same identities for marketing purposes.

**Facts Relating to Plaintiff Isabel Sippo-Stockman (Illinois)**

60. As of August 2025, Plaintiff Isabel Sippo-Stockman's identity was contained in SMARTe's database and accessible through SMARTe's platform.

61. Sippo-Stockman's "profile" contained in SMARTe's database includes her name, photograph, job title, job location, and mobile phone number. This information is accessible through SMARTe's search function on the platform and is sufficient to identify Sippo-Stockman.

62. Potential customers availing themselves of the free access to the SMARTe Platform are able to view Sippo-Stockman's identity in the SMARTe database by searching for her by name or by filtering according to location or industry, among other criteria. Such potential customers are then able to view additional information about Sippo-Stockman by hitting the "reveal" button using their limited free credits.

63. SMARTe allows free access to Sippo-Stockman's identifying personal information contained in its database to have potential customers familiarize themselves with the platform in the hope that those customers are incentivized to enter into paid subscriptions for upgraded access to its database through the Platform.

64. Sippo-Stockman's identity has been made accessible, *i.e.*, held out, by SMARTe through its free access to market paid subscriptions to its platform and has thus been used for a

14

commercial purpose under IRPA. *See* 765 ILCS § 1075/5.

65. Sippo-Stockman has no relationship with SMARTe and does not utilize or subscribe to its platform.

66. Sippo-Stockman has property rights in her name, likeness, and identity expressly recognized by IRPA. *See* 765 ILCS § 1075/15. Sippo-Stockman has the statutory right under IRPA to exclude anyone from using his identity for commercial purposes without her written consent. § 1075/30(a).

67. Sippo-Stockman did not provide SMARTe with written consent to use her identity for commercial purposes, including marketing paid subscriptions, as required by Illinois law. Had SMARTe requested her consent, Sippo-Stockman would not have provided it.

68. By using and exercising control over Sippo-Stockman's identity by making it accessible through its free access, without her written consent, SMARTe has injured Sippo-Stockman by violating her "right to control and to choose whether and how to use [her] individual identity for commercial purposes." *See* 765 ILCS § 1075/10.

69. SMARTe's use of Sippo-Stockman's identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Sippo-Stockman is a willing participant in the platform, which she is not, and that she wants to receive unsolicited communications from sales professionals, marketers, and business development representatives, which she does not.

70. SMARTe has injured Sippo-Stockman by using her identity in its free trial for its own commercial purposes, *i.e.*, to market subscriptions to the SMARTe platform, without her written consent in violation of IRPA.

71. The use of Sippo-Stockman's identity to advertise and market subscriptions to SMARTe's platform demonstrates that her identity has commercial value, to wit, its inclusion in

the platform. SMARTe's business model is dependent on Sippo-Stockman's identity and others like it. SMARTe derives value through the accumulation of individual identities for its platform by (i) charging subscribers a monthly or yearly fee for access to those identities and (ii) using the same identities for marketing purposes.

**Facts Relating to Plaintiff Sruti Bhaumik (California)**

72.     As of December 2025, Plaintiff Sruti Bhaumik's identity was contained in SMARTe's database and accessible through SMARTe's platform.

73.     Bhaumik's "profile" contained in SMARTe's database includes her name, job title, company, email address, mobile phone number, work phone number, and other personal information. This information is accessible through SMARTe's search function on the platform and is sufficient to identify Bhaumik.

74.     Potential customers availing themselves of the free access to the SMARTe are able to view Bhaumik's identity in the SMARTe database by searching for her by name or by filtering according to location or industry, among other criteria. Such potential customers are then able to view additional information about Bhaumik by hitting the "reveal" button using their limited free credits.

75.     SMARTe knowingly allows free access to Bhaumik's identifying information contained in its database to have potential customers familiarize themselves with the platform in the hope that those customers are incentivized to enter into paid subscriptions for upgraded access to its database through the Platform.

76.     Bhaumik's identity has been knowingly made accessible, *i.e.*, "used," by SMARTe through its free access to market paid subscriptions to its platform. Indeed, as a data broker, SMARTe's entire business model revolves around the marketing of identifying information.

77. Bhaumik has no relationship with SMARTe and does not utilize or subscribe to its platform.

78. Bhaumik did not provide SMARTe with prior consent to use her identity for commercial purposes, including marketing paid subscriptions, as required by California law. Had SMARTe requested her consent, Bhaumik would not have provided it.

79. SMARTe's knowing use of Bhaumik's identity to advertise and market subscriptions to its platform is misleading in that it gives the false impression that Bhaumik is a willing participant in the platform, which she is not, and that she wants to receive unsolicited communications from sales professionals, marketers, and business development representatives, which she does not.

80. Bhaumik has intellectual property interests in her name, likeness, and identity recognized by California statutory law.

81. Bhaumik has the right to exclude anyone from using her identity for commercial purposes without her consent.

82. SMARTe has injured Bhaumik by knowingly using her identity for its own commercial purposes, *i.e.,* to market subscriptions to the SMARTe platform, without her consent in violation of California's Right of Publicity statute.

83. The use of Bhaumik's identity to advertise and market subscriptions to SMARTe's platform demonstrates that her identity has commercial value, to wit, its inclusion in the platform. SMARTe's business model is dependent on Bhaumik's identity, and others like it. SMARTe derives value through the accumulation of individual identities for its platform by (i) charging subscribers a monthly or yearly fee for access to those identities and (ii) using the same identities for marketing purposes.

**Facts Relating to Plaintiff Kuawanda Ragland (Alabama)**

84. As of August 2025, Plaintiff Kuawanda Ragland's identity was contained in SMARTE's database and accessible through SMARTe's platform.

85. Ragland's "profile" contained in SMARTe's database includes her name, job title, work location, mobile phone number, and other personal information. This information is accessible through SMARTe's search function on the platform and is sufficient to identify Ragland.

86. Potential customers availing themselves of the free access to SMARTe Platform, including those in Alabama, are able to view Ragland's identity in the SMARTe database by searching for her by name or by filtering according to location or industry, among other criteria. Such potential customers are then able to view additional information about Ragland by hitting the "reveal" button using their free credits.

87. SMARTe knowingly and deliberately allows free access to Ragland's identifying information contained in its database to have potential customers, including those in Alabama, familiarize themselves with the platform in the hope that those customers are incentivized to enter into paid subscriptions for upgraded access to its database through the platform.

88. Ragland's identity has been knowingly and deliberately made accessible, *i.e.* "used," by SMARTe through its free access to market paid subscriptions to its platform.

89. Based on the scope of SMARTe's database and the number of profiles/contacts contained therein, Ragland contends that her identity was used by SMARTe to advertise its subscription services to its platform in Alabama.

90. Ragland has no relationship with SMARTe and does not utilize or subscribe to its platform.

91. Ragland did not provide SMARTe with consent to use her identity for commercial

18

purposes, including marketing paid subscriptions, as required by Alabama law. Had SMARTe requested her consent, Ragland would not have provided it.

92. SMARTe's knowing and deliberate use of Ragland's identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Ragland is a willing participant in the platform, which she is not, and that she wants to receive unsolicited communications from sales professionals, marketers, and business development representatives, which she does not.

93. Under ARPA, Ragland has intellectual property interests in her name, likeness, and identity recognized by Alabama statutory law.

94. Ragland has the right under ARPA to exclude anyone from using her identity for commercial purposes without her consent.

95. SMARTe has injured Ragland by using her identity for its own commercial purposes without compensation or consent in violation of ARPA.

96. The use of Ragland's identity in SMARTe's free trial to advertise subscriptions to SMARTe's platform demonstrates that her identity has commercial value, to wit, its inclusion in the platform. SMARTe's business model is dependent on Ragland's identity, and others like it. SMARTe derives value through the accumulation of individual identities for its platform by (i) charging subscribers a monthly or yearly fee for access to those identities, and (ii) using the same identities for marketing purposes.

## Class Allegations

97. Plaintiffs bring this class action on behalf of themselves and the following classes listed below pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3).

98. Each of the Plaintiffs seeks to represent a class of individuals comprised of citizens and residents of the state from which they are citizens and residents. These respective classes are

19

defined as follows:

**A. Illinois Class:** All current and former Illinois residents who are not subscribers to SMARTe's platform and whose identities are or have been used to market paid subscriptions for SMARTe's platform.

**B. California Class:** All current and former California residents who are not subscribers to SMARTe's platform and whose identities are or have been used to market paid subscriptions for SMARTe's platform.

**C. Alabama Class:** All current and former Alabama residents who are not subscribers to SMARTe's platform and whose identities are or have been used to market paid subscriptions for SMARTe's platform.

99.     Excluded from the Classes are Defendants, their officers, directors, shareholders, members, managers, employees, attorneys (and attorney family members), and members of the Illinois judiciary. Plaintiffs reserve the right to amend the Class definitions upon completion of class discovery when the contours and the parameters of the Class become more apparent.

100.     **Numerosity (Fed. R. Civ. P 23(a)(1))**.   The members of the Classes are so numerous that joinder of all members is impractical. Based on the investigation by their counsel and representations made by Defendant about its database, Plaintiffs reasonably believe that each Class comprises thousands of current and former residents of Illinois, California, and Alabama whose identities are contained in and/or viewable on the platform. The exact number of persons in each Class can be determined from records maintained by Defendant, but certainly exceeds 40 persons for each Class, and is estimated to be in the thousands for each state.

101.     **Commonality (Fed. R. Civ. P. 23(a)(2))**. There are many common questions of law and fact that exist as to Plaintiffs and members of the Classes, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to:

(a)     Whether Defendant used Plaintiffs' and Class Members' identities for their own commercial benefit without consent, written or otherwise;

(b) Whether the conduct described herein constitutes a violation of the respective right of publicity statutes for Illinois, California, and Alabama;

(c) Whether Defendant's violations of the various right of publicity statutes were willful, which would entitle Plaintiffs and the Classes to punitive damages; and

(d) Whether Plaintiffs and Class Members are entitled to declaratory, injunctive, and monetary relief as requested.

102. **Typicality (Fed. R. Civ. P. 23(a)(3))**. Plaintiffs' claims are typical of the claims of the members of the Classes. Defendant's knowing misuse of Plaintiffs' and Class Members' identities, personal information, and other identifying information was the same for each.

103. **Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))**. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained competent counsel experienced in class action litigation in state and federal courts nationwide, and Plaintiffs have no interest adverse to any member of the Class. Plaintiffs intend to prosecute this case vigorously on behalf of themselves and the Classes.

104. **Injunctive and/or Declaratory Relief (Fed. R. Civ. P. 23(b)(2))**. As demonstrated above, SMARTe has acted on grounds generally applicable to the proposed Classes such that final injunctive relief is appropriate with respect to each Class as a whole.

105. **Predominance and Superiority (Fed. R. Civ. P. 23(b)(3))**. Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a) Proof of Defendant's liability on Plaintiffs' claims will also prove liability for the claims of the Classes without the need for separate or individualized proceedings;

(b) Evidence regarding defenses or any exceptions to liability that Defendant may assert and attempt to prove will come from Defendant's records and will not require individualized or separate inquiries or proceedings;

(c)     Defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all Class Members;

(d)     The injury suffered by each Class Member, while meaningful on an individual basis, is not of such economic magnitude as to make the prosecution of individual actions against Defendant economically feasible. Even if Class Members could afford individual litigation, those actions would put immeasurable strain on the court system. A class action, on the other hand, will permit a large number of claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs, without the risk of inconsistent judgments; and

(e)     This case is inherently manageable as a class action in that:

   (i)     Defendant's records will enable Plaintiffs to readily identify members and establish liability and damages;

   (ii)    Liability and damages can be established for Plaintiffs and the Class with the same common proofs;

   (iii)   A class action will result in an orderly and expeditious administration of claims, and it will foster economies of time, effort, and expense;

   (iv)    A class action will contribute to uniformity of decisions concerning Defendant's practices; and

   (v)     As a practical matter, the claims of the Classes are likely to go unaddressed absent class certification.

## COUNT I—VIOLATION OF ILLINOIS RIGHT OF PUBLICITY ACT
### (on behalf of the Illinois Class)

106.    Plaintiffs Cunningham and Sippo-Stockman incorporate by reference the allegations contained in paragraphs 1-24, 30-71, 97-105 of this FAC as if fully restated herein.

107.    As stated, IRPA defines "right of publicity" as the "right to control and to choose whether and how to use an individual's identity for commercial purposes." 765 ILCS § 1075/10.

108.    IRPA prohibits and provides a private right of action and damages for using or holding out an individual's identity for commercial purposes without first obtaining written consent. 765 ILCS § 1075/30.

109.    By engaging in the foregoing acts and omissions, Defendant knowingly and

22

deliberately used the identities of Cunningham, Sippo-Stockman, and the Illinois Class Members for commercial purposes without obtaining written consent.

110. Each use of Cunningham's, Sippo-Stockman's, and Illinois Class Members' identities through Defendant's platform to market paid subscriptions is a separate and distinct violation of IRPA giving rise to damages.

111. As a result of Defendant's violations of IRPA, Cunningham, Sippo-Stockman, and the Illinois Class have suffered injury to their publicity rights under IRPA.

112. Under IRPA, Defendant is liable for the greater of: (i) statutory damages in the amount of $1,000 per violation; or (ii) the sum of "actual damages" and "profits derived from the unauthorized use." 765 ILCS § 1075/40. IRPA also provides for punitive damages if the violation is willful and for injunctive relief. 765 ILCS § 1075/40 & 50.

113. Cunningham, Sippo-Stockman, and Illinois Class Members have been denied the commercial value of their identities, which Defendant knowingly and deliberately used without permission from or compensation to Cunningham, Sippo-Stockman, and Illinois Class Members.

114. Cunningham, Sippo-Stockman, and Illinois Class Members were denied their statutorily protected right to control how their identities are used and suffered damages based on that misuse.

115. Cunningham and Sippo-Stockman, on behalf of themselves and the Illinois Class, seek: statutory damages for each violation of IRPA or, alternatively, actual damages and profits derived from the unauthorized use of their identities, whichever is greater; punitive damages if it is found that Defendant's actions were willful; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

## COUNT II—VIOLATION OF CALIFORNIA CIVIL CODE, § 3344 *et seq.*
### (on behalf of the California Class)

116. Plaintiff Sruti Bhaumik incorporates by reference the allegations contained in paragraphs 1-18, 25-26, 30-47, 72-83, and 97-105 of this FAC as if fully stated herein.

117. As stated, California Civil Code § 3344 prohibits the knowing use of "another's name, voice, signature, photograph, or likeness, in any manner . . . without such person's prior consent." Cal. Civ. Code § 3344.

118. Section 3344 provides for damages for any such violation in the amount of $750 or the actual damages suffered on account of the unauthorized use. It also provides for the possibility of an award for punitive damages. *Id.*

119. By engaging in the foregoing acts and omissions, Defendant knowingly and deliberately used the identity of Bhaumik and the California Class Members' identities for commercial purposes without first obtaining prior consent. The use of Bhaumik's and California Class Members' personalities in this manner demonstrates that they have commercial value.

120. Each use of Bhaumik's California Class Members' identities is a separate and distinct violation of section 3344 giving rise to damages.

121. As a result of Defendant's violations, Bhaumik and California Class Members have suffered injury to their publicity rights as well as economic damages. Bhaumik and the California Class Members have been denied the commercial value of their identities, which Defendant knowingly and deliberately used without permission from or compensation to Bhaumik and California Class Members. Bhaumik and California Class Members were denied their statutorily protected right to control how their identities are used and suffered damages based on that misuse.

122. Bhaumik, on behalf of herself and the California Class, seek statutory damages for each violation of section 3344, or alternatively, actual damages suffered for the unauthorized use,

24

whichever is greater; punitive damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

## COUNT III—VIOLATION OF ALABAMA RIGHT OF PUBLICITY STATUTE
### (on behalf of the Alabama Class)

123.    Plaintiff Kuawanda Ragland incorporates by reference the allegations contained in paragraphs 1-18, 27-47, 84-105 of the FAC as is fully restated herein.

124.    As stated, ARPA prohibits the use of an individual's identity "for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services . . . without consent." AL ST § 6-5-772.

125.    Any person who establishes a violation of ARPA shall be eligible to receive: (i) statutory damages of $5,000 per action or compensatory damages including the Defendant's profits, (ii) any other damages available under Alabama law, including punitive damages and (iii) injunctive relief.  AL ST § 6-5-774. Liability attaches whether the use is for profit or not. AL ST § 6-5-772.

126.    By engaging in the foregoing acts and omissions, Defendant knowingly and deliberately used Ragland's and the Alabama Class Members' identities for commercial purposes, in Alabama and elsewhere, without first obtaining prior consent.

127.    The identities of Ragland and the Alabama Class Members have commercial value since they are used to by Defendant to create and market their SMARTe platform.

128.    Each use of Ragland's and Alabama Class Members' identities is a separate and distinct violation of ARPA.

129.    As a result of Defendant's violations, Ragland and the Alabama Class Members have suffered injury to their publicity rights as well as economic damages. Ragland and the Alabama Class Members have been denied the commercial value of their identities, which

25

Defendant knowingly and deliberately used without permission from or compensation to Ragland and the Alabama Class Members.

130. Ragland and Alabama Class Members were denied their statutorily protected right to control how their identities are used and suffered damages based on that misuse.

131. Ragland, on behalf of themselves and the Alabama Class Members, seeks damages for each violation of ARPA in the amount of $5,000 per action, or compensatory damages including the Defendant's profits; any other damages available under Alabama law, including punitive damages; injunctive relief; prejudgment interest; and an award of attorneys' fees and costs.

**WHEREFORE**, Plaintiffs Randall Cunningham, Isabel Sippo-Stockman, Sruti Bhaumik, and Kuawanda Ragland, individually and on behalf of all other similarly situated persons, demand judgment in their favor and against SMARTe as follows:

A. Certifying this case as a Class Action and appointing Plaintiffs and their attorneys as class representatives and class counsel, respectively;

B. Declaring that SMARTe's actions, as described herein, violate the right of publicity statutes in Illinois, California, and Alabama;

C. Awarding statutory damages to Plaintiffs and the Classes for each violation of the respective statutes, or, alternatively, actual damages and profits derived from the unauthorized use of Plaintiffs' and Class Members' identities, whichever is greater, plus prejudgment interest from the date of each violation until the date judgment is entered;

D. Awarding punitive or exemplary damages to Plaintiffs and the Class Members for each violation of the respective statutes, if appropriate.

E. Enjoining SMARTe from committing further violations of their rights of publicity;

F. Awarding Plaintiffs their reasonable attorneys' fees and costs incurred in filing and prosecuting this action; and

G. Awarding such other and further relief as this Court deems appropriate and just.

26

Respectfully submitted,

Randall Cunningham, Isabel Sippo-Stockton, Sruti Bhaumik, and Kuawanda Ragland, individually and as the representatives of a class of similarly-situated persons,

By:   s/ Patrick J Solberg
Patrick J. Solberg
Wallace C. Solberg
ANDERSON + WANCA
3701 W. Algonquin Rd. Ste 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
psolberg@andersonwanca.com
wsolberg@andersonwanca.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 2, 2026, a true and correct copy of the foregoing First Amended Class Action Complaint was e-filed and served on all counsel of record using the Court's CM/ECF system.

/s/ Patrick J. Solberg

27